IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 2:10CR61 |
| v. | ) | |
| | ) | |
| ALAN PAUL STRIEPER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, Neil H. MacBride, United States

Attorney for the Eastern District of Virginia, and Melissa E. O'Boyle, Assistant United States

Attorney, hereby files the instant "Position with Respect To Sentencing". It is the Government's

position that, based on the Pre-Sentence Report and the 18 U.S.C. § 3553(a) factors, defendant

ALAN PAUL STRIEPER should be sentenced to at least 420 months imprisonment. If necessary

the Government intends to call Special Agent Paul G. Wolpert, Department of Homeland Security,

Immigration and Customs Enforcement ("ICE") to testify regarding the facts contained herein. In

support of its position, the Government states as follows:

**I.      STATEMENT OF FACTS**

On June 11, 2010, defendant ALAN PAUL STRIEPER pled guilty, without a plea

agreement, to: one count of attempted enticement  in violation of 18 U.S.C. § 2422(a); two counts

of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2); and one count of possession

of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).[1]  Defendant's sentencing hearing

---

[1]  A violation of 18 U.S.C. § 2422(a) carries a maximum penalty of 20 years imprisonment; a
violation of 18 U.S.C.  § 2252A(a)(2) carries a mandatory minimum of five years imprisonment an

is scheduled for September 7, 2010 at 2:30 p.m. before the Honorable United States District Judge

Mark S. Davis.  At that hearing, the Government will maintain that a sentence of at least 420 months

imprisonment is reasonable and appropriate given the extremely serious facts and circumstances

underlying the instant case.

### A.    Defendant's Plot to Kidnap, Rape and Murder a Child

When defendant arrived at the Norfolk International Airport on February 5, 2010, he

intended to pick up a fellow pedophile to participate in a plot to kidnap, rape and murder a child.

As explained in his Statement of Facts underlying his guilty plea and the Pre-Sentence Report,

defendant corresponded via the Internet from late November 2009 until February 5, 2010 with a

confidential informant ("CI") with whom defendant planned to engage in unthinkable acts against

a young child.

Defendant admitted to the facts and circumstances underlying his plan to kidnap and rape

a child in the signed Statement of Facts entered into the record at his guilty plea. *See* Statement of

Facts (Document 21) filed on June 11, 2010.  However, a review of the full transcript of his chats

with the confidential source leave little doubt that defendant also intended to murder the child and

dispose of his/her body.  On December 2, 2009, defendant first raised the possibility that the child

might die from the abuse he would suffer during the rape saying: "[c]an you imagine if he died and

there was murder charges on us.  Except they wouldn't know who we are."  Two days later,

defendant addressed the issue of what would happen if they killed the child after molesting him

stating that "we would have to just toss him in a weighted bag in a river I guess.  Not sure though."

---

a maximum penalty of 20 years imprisonment; and a violation of 18 U.S.C. § 2252A(a)(5)(B) carries
a maximum penalty of 10 years imprisonment.

Defendant further noted that "[t]he longer it takes for anyone to find a body then the more evidence is gone too." The CI then pointedly asked defendant "so if he dies are you 100% okay with that?" Defendant responded: "Ya, I won't really have a choice, so yes I will be okay. You?" The CI agreed, and defendant added "[t]he thought of being serial molesters makes me hard too lol."

Defendant returned to the topic of killing the child on December 22, 2009. During a discussion about how to avoid detection, defendant stated that people get caught by "leaving stupid, easily destroyable evidence behind." Defendant then posed the following question: "so how would be kill them, lol, it can't be to messy. My guess would be strangulation perhaps."[2] Finally, on January 9, 2010, defendant stated that the child "will probably be all bruised and bloody if not dead when were done lol."[3] Defendant resolved that issue by saying "if he dies, he's going in a trash bag and getting hidden somewhere."

## B.    Defendant's Extensive Child Pornography Collection

In addition to the child pornography videos and images found on defendant's computer during the forensic examination, defendant's chats with the CI reveal the true extent and nature of his interest in viewing and possessing child pornography. On December 1, 2009, defendant told the CI that he possessed "20gb" of child pornography, but that it was "almost time to wipe and start over though." Describing his typical procedure for dealing with his collection, defendant stated that, "I erase the computer every couple of months, destroying the data to the standards of the us government and start over." Defendant bragged that he had "lots if videos" including "alll sorts of men fu*****boys, boys fu***** boys, etc."

---

[2]  All incorrect grammar and misspelled words were included in the original chats.

[3]  During these chats, defendant also makes several references to engaging in necrophilia.

On December 4, 2009, defendant stated "I want to see some real brutal kind and young lol. I don't really have very young videos. . . .  The youngest I have is like 6 or 7 I think."  Defendant complained that he had "never seen a baby pic but would love too, but don't know where to get that."  Comparing the girls and boys in his collection, defendant stated that "[t]he boys are usually just quiet and don't say anything" but that he had "seen a girl one where she was crying a lot." Defendant then stated "I want to see a boy cry!!"  Finally, defendant told the CI that he has a video called "2yo getting raped during diaper change."  Defendant labeled the video "awesome" because "[h]e forces her down on his lap so hard and just nails the f*** out of her."  After describing additional details of this particular video, defendant exclaimed "[t]hat's what I want to do with a boy and a girl!!!"

## C.      Defendant's Attempted Enticement of Minors

As noted in the Pre-Sentence Report, defendant also has attempted to entice minors into engaging in illegal sexual activity.  Specifically, defendant had profiles on several social networking sites that he utilized to meet underage boys.  In particular, defendant attempted to entice two fifteen year old boys from Chesapeake and Virginia Beach.

### (i)      15 Year Old Boy From Chesapeake

On February 4, 2010, defendant told the CI that he had "a 15yr want me to do him a while back but never did."  Describing his online activity with this child, defendant stated that he "saw his d*** on my computer and it was still smallish, and he looks way younger, he had just turned 15." After his arrest the next day, defendant waived his Miranda rights and disclosed to an ICE agent that he met this particular 15 year old on a website called "Boy Ahoy."  Defendant stated that while the 15 year old originally told him he was 18, he later learned through chats that the boy was indeed 15

years old.  Defendant disclosed that he and the minor boy had made arrangements to meet at a park

in Chesapeake, Virginia, but that defendant could not locate him.  When asked what defendant

planned to do if he found the boy at the park, defendant replied that the boy "said he wanted to suck

my d***."

### (ii)      15 Year Old Boy From Virginia Beach

In addition to the minor from Chesapeake, defendant also engaged in online communications

with a 15 year old boy from Virginia Beach.  Defendant had inappropriate sexual conversations with

this minor.  Specifically, on February 5, 2010, defendant asked the boy "do u want me to f*** you

in you're a** or you f*** my a** or both."  Defendant also suggested to the boy that they meet that

Sunday afternoon.  During an interview with an ICE agent and a Virginia Beach Police detective,

the boy confirmed that he chatted online with the defendant and that they had discussed a possible

meeting, but that they had never actually met.

## II.      STANDARDS GOVERNING SENTENCING

In three opinions, the Supreme Court pronounced a well-established sentencing regime.  In

*United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing

Guidelines purely advisory, but emphasized that a sentencing court must consider both the

Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision.  *Id.* at 264.  The

Supreme Court reaffirmed this principle in *United States v. Kimbrough,* 128 S. Ct. 558 (2007)

emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several

courts must consider in determining an appropriate sentence."  *Id.* at 564.  Finally, in *Gall v. United*

*States,* 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should

calculate the sentencing guideline range, permit the government and the defendant "an opportunity

to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and

finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 596-97.  The *Gall*

Court further instructed that, in the event that the sentencing court decides to impose a variance

sentence, the court "must consider the extent of the deviation and ensure that the justification is

sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure

should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1)

properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem

appropriate and determine whether the § 3553(a) factors[1] support the sentences requested by the

parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons,* No. 07-

4888, 2008 WL 681764, at *1 (4th Cir. March 11, 2008) (citing *United States v. Pauley,* 511 F.3d

468, 473 (4th Cir. 2007)).

III.    **THE PROBATION OFFICE PROPERLY CALCULATED THE ADVISORY SENTENCING GUIDELINE RANGE OF 360 MONTHS TO LIFE**

   A.    **The Pre-Sentence Report**

The Probation Office properly calculated the advisory sentencing guideline range of 360

months to life imprisonment.  Ultimately, defendant's advisory guideline range is based on Section

2G2.2 of the United States Sentencing Commission Guidelines Manual ("U.S.S.G.") which provides

---

[1]  The factors a sentencing court must consider under 18 U.S.C. § 3553(a) are: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to promote the goals of sentencing; (4) the kinds of sentences available; (5) the sentencing guideline range; (6) any pertinent policy statement issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense.

the calculation for defendant's receipt of child pornography. The base offense level for the receipt

charge is 22. The Probation Office then concluded that the following enhancements applied to

defendant:

> • two-level enhancement because the material involved a prepubescent minor (U.S.S.G. §
> 2G2.2(b)(2));
>
> • five-level enhancement because the defendant distributed for the receipt, or expectation of
> receipt of a thing of value, but not for pecuniary gain (U.S.S.G. § 2G2.2(b)(3)(B));
>
> • four-level enhancement for material that portrays sadistic or masochistic conduct (U.S.S.G.
> § 2G2.2(b)(4));
>
> • five-level enhancement because defendant engaged in a pattern of activity involving the
> sexual abuse or exploitation of a minor (U.S.S.G.§ 2G2.2(b)(5));
>
> • two-level enhancement because the offense involved the use of a computer (U.S.S.G. §
> 2G2.2(b)(6)); and a
>
> • five-level enhancement because the offense involved over 600 images (U.S.S.G. §
> 2G2.2(b)(7)(D)).

The application of these enhancements resulted in an adjusted offense level of 45. The Probation

Office properly deducted three-levels for acceptance of responsibility[2] which resulted in a total

offense level of 42. The defendant is in criminal history category I which resulted in an advisory

guideline range of 360 to life.

The Government has no objections to the calculation of this guideline range. However, the

defendant objects to the application of a five-level enhancement arising from defendant's pattern

of activity involving the sexual abuse or exploitation of a minor. As discussed below, the

Government maintains that the pattern and practice enhancement is applicable because of

---

[2] On August 15, 2010, the Government filed a Motion for Downward Adjustment In Guideline
Range Pursuant to U.S.S.G. § 3E1.1(b) to reflect defendant's timely notification of his intention to
enter into an early plea agreement.

defendant's repeated attempts to entice an adult and at least two minors to engage in illegal sexual

activity.

Finally, although the calculation of defendant's guideline range for the attempted enticement

charge does not ultimately impact defendant's advisory guideline range, the Government and the

defendant both have objections to the Probation Office's calculation of this guideline.[3]   The base

offense level for the attempted enticement charge pursuant to U.S.S.G. § 2G1.3 is 24.   The

Probation Office enhanced defendant's range by eight levels because the offense involved a minor

who had not reached the age of twelve.  *See* U.S.S.G. § 2G1.3(b)(5).  The defendant objects to this

enhancement.  The Government not only believes that this enhancement applies, but also maintains

that the Probation Office should enhance defendant's sentence by two levels because the offense

involved the use of a computer.  *See* U.S.S.G. § 2G1.3(b)(3)(B).

### B.      Defendant's Objections To The Pre-Sentence Report Are Without Merit

#### (i)      Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of minors

As noted in the PSR, defendant engaged in a pattern of activity involving the sexual abuse

or exploitation of a minor.  The application notes to U.S.S.G. § 2G2.2(b)(5) define a "pattern" as

"any combination of two or more separate instances of sexual abuse or sexual exploitation of a

minor by the defendant."  The Guidelines further define "sexual abuse or exploitation of a minor"

as including the crime of attempted enticement.  *See* U.S.S.G. § 2G2.2 app. n. 1 (defining

---

[3] The Government did not have an objection to the Probation Office's original calculation under this guideline; however, it now objects to the amended calculation in the office's filed addendum.  The Probation Office originally enhanced defendant's sentence by two levels for the use of a computer, but now agrees with defendant that this enhancement does not apply.  The Government believes that the original calculation was correct and that defendant's sentence should be enhanced for the use of a computer.

exploitation as conduct described in 18 U.S.C. § 2422– the enticement statute)).  The factual basis for the pattern enhancement is three-fold.

First, it is undisputable that defendant engaged in one instance of sexual exploitation of a minor because he pled guilty to such conduct on June 11, 2010.  In this case, defendant pled guilty to committing attempted enticement in violation of 18 U.S.C. § 2422(a) for his plot to kidnap and molest a child.  As such, the Government only needs to prove one more instance of attempted enticement to support the application of the pattern enhancement.

Second, defendant attempted to entice a 15 year old Chesapeake boy to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b).  In substance, Section 2422(b) makes it a crime for any individual to use any facility or means of interstate commerce to persuade, induce, entice or coerce any individual who has not attained the age of 18 years to engage in illegal sexual activity. In *United States v. Kaye,* 451 F. Supp. 2d 775 (E.D. Va. 2006), the Court articulated the types of facts that would satisfy an attempted violation of 2422(b): "(1) sexual dialog between Defendant and the "minor"; (2) repeated references to what would be performed upon meeting the minor; (3) the transmission of a sexually suggestive photograph; and (4) travel by Defendant to meet the minor." *Id.* at 778.  The *Kaye* court further stated that any of these types of facts "would likely be sufficient by themselves to constitute a substantial step." *Id.*  Here, defendant's conduct with the 15 year old Chesapeake boy violates 2422(b) and provides the necessary second instance justifying the pattern enhancement.

As discussed above, defendant told the CI that he had "a 15yr want me to do him a while back but never did."  Describing his online activity with this child, defendant stated that he "saw his d*** on my computer and it was still smallish, and he looks way younger, he had just turned 15."

After his arrest the next day, defendant waived his Miranda rights and disclosed to an ICE agent that

he met this particular 15 year old on a website called "Boy Ahoy." Defendant stated that while the

15 year old originally told him he was 18, he later learned through chats that the boy was indeed

15 years old. Defendant disclosed that he and the minor boy had made arrangements to meet at a

park in Chesapeake, Virginia, but that defendant could not locate him. When asked what defendant

planned to do if he found the boy at the park, defendant replied that the boy "said he wanted to suck

my d***." It is a violation of the laws of the Commonwealth of Virginia for an adult to engage in

oral or anal sodomy with a minor. *See* Va. State Code Ann. 18.2-361; *McDonald v. Commonwealth*

*of Virginia,* 274 Va. 249, 260 (Va. 2007) (upholding application of criminal sodomy statute from

as applied constitutional challenge where conduct was between an adult and a minor under the age

of 18). Defendant's admitted conduct establishes a second instance of sexual exploitation of a minor

sufficient to justify the application of the five level pattern enhancement. The Government,

however, can further demonstrate a third violation of Section 2422(b).

Finally, defendant's attempt to entice a 15 year old boy from Virginia Beach to engage in

illegal sexual activity establishes a third violation of 2422(b) and reinforces the application of the

pattern enhancement. In this instance, defendant had inappropriate sexual conversations with this

minor. Specifically, on February 5, 2010, defendant asked the boy "do u want me to f*** you in

you're a** or you f*** my a** or both." Defendant also suggested to the boy that they meet that

Sunday afternoon. During an interview with an ICE agent and a Virginia Beach Police detective,

the boy confirmed that he had chatted online with the defendant, that the conversations were sexual

in nature and that they had discussed a possible meeting. Such actions constitute a third violation

of the enticement statute and firmly establishes a factual basis for the five-level pattern of

exploitation enhancement.

Accordingly, for these three reasons, the five-level enhancement for pattern of exploitation is applicable in this case.  As this is the only objection defendant asserts with respect to the receipt guideline, the Government respectfully submits that the Probation Office appropriately calculated defendant's advisory guideline range of 360 months to life.  The remaining objections discussed below, while important, have no impact on defendant's advisory guideline range.

### (ii)   Defendant's attempted enticement involved a minor who had not reached the age of twelve

The Probation Office also correctly applied an enhancement under the U.S.S.G. § 2G1.3 arising from defendant's attempted enticement of a minor who had not reached the age of twelve. The application notes to the guideline firmly establish that the application of this enhancement does not revolve around whether the minor involved in the crime is identifiable or real.  Application Note 1 to section 2G1.3 firmly establishes that the term "minor" means "an individual who had not attained the age of 18 years."  Alternatively, the note further states that a "minor" also means "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years."  In both instances, the Guidelines anticipate the application of the eight point enhancement where, as here, a defendant intends to engage in illegal sexual conduct with a real or hypothetical minor.  The Guideline simply does not limit its application only to a real, specific minor.

Here, defendant's intent to kidnap, rape and murder a child under the age of twelve could not be more well established.  During their chats, defendant and the CI repeatedly discussed the age of the intended victim.  On December 1, 2009, defendant stated "[a]s much as I would love a 2 or younger.  I think that's impossible.  They don't exactly walk down the streets alone lol. . . . We

11

probably have to find a 6 to 12." Alternatively, defendant suggested "for the newborns we could

go to a random hospital and grab and go lol." The next day, the CI asked defendant what would be

his ideal age to grab to which defendant responded "[y]ou think 4 or 5 is possible?" Then, on

December 4, 2009, defendant again stated "I wonder if it's possible to get a newborn somehow."

Throughout their conversations, defendant never suggested kidnapping a child over the age of

twelve. Accordingly, the Probation Office appropriately applied the eight level enhancement arising

from the offense involving a minor under the age of twelve.

> **C.** **Defendant's Attempted Enticement Guideline Should Be Enhanced For His Use Of A Computer**

It is the Government's position that the Court should enhance defendant's enticement

guideline under U.S.S.G. § 2G1.3 by two levels arising from his use of a computer to attempt to

entice a person to engage in illegal sexual activity. *See* U.S.S.G. § 2G1.3(b)(3). This enhancement

provides as follows:

> If the offense involved the use of a computer or an interactive
> computer service to (A) persuade, induce, entice, coerce, or facilitate
> the travel of, the minor to engage in prohibited sexual conduct; or (B)
> entice, encourage, offer, or solicit a person to engage in prohibited
> sexual conduct with the minor, increase by 2 levels.

*Id.* Defendant's argument that the use of a computer enhancement is inapplicable is based solely

on Application Note 4 which states that the enhancement "is intended to apply only to the use of a

computer or an interactive computer service to communicate directly with a minor or a person who

exercises custody, care or supervisory control of the minor." According to defendant, the

enhancement does not apply because he was talking to an adult CI about kidnapping a minor and

not using the computer to communicate directly with either a minor or a custodial adult.

Defendant's argument is without merit for two reasons: (1) relevant conduct has established that

defendant did, in fact, use a computer to talk to minors to attempt to entice them to engage in illegal sexual activity; and (2) defendant interpretation of the guideline is plainly erroneous.

First, as discussed at length above, relevant conduct has established that defendant did use the computer to solicit at least two minors to engage in illegal sexual activity: (1) a 15 year old boy from Chesapeake; and (2) a 15 year old boy from Virginia Beach. Therefore, even under defendant's strained reading of the enhancement, this conduct establishes a factual basis for the enhancement.

Second, almost the entire factual basis for defendant's attempted enticement count involves the defendant's use of a computer. It is undisputed that from late November 2009 until February 5, 2010, defendant used a computer – just as stated in the enhancement – "to entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor." Defendant's reliance on Application Note 4 to perpetuate an unreasonable limitation would result in a plainly erroneous reading of this guideline.

Although commentary that interprets or explains a sentencing guideline ordinarily is authoritative, it is not authoritative if it "is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States,* 508 U.S. 36, 38 (1993). As discussed above, the use of a computer enhancement has two subsections. Subsection (A) focuses on a defendant's conduct with a minor; whereas Subsection (B) focuses on a defendant's conduct with an adult. Application note 4; however, appears to address only computer contact with the minor or the minor's guardian and thus seems intended to limit its scope to Subsection (A). Indeed, the commentary's sole example describing how it would not apply solely to the use of a computer to obtain an airline ticket for a minor, appears to relate solely to Subsection (A) – the only subsection that applies to use of a

computer to facilitate travel.  If the commentary is read to apply to the entire guideline enhancement, then it essentially would eliminate Subsection (B) and its clearly worded enhancement for use of a computer to entice an adult to engage in illegal sexual activity with a minor.  A commentary that would eliminate almost entirely half of the grounds for an enhancement is a plainly erroneous reading of that enhancement.

Because defendant's reading of Application Note 4 to swallow half of the enhancement in Section 2G1.3(b)(3) is plainly erroneous, the Guideline itself controls.  Accordingly, the Court should apply the two level enhancement for use of a computer to the calculation of defendant's attempted enticement guideline range.  The application of the use of a computer enhancement and the eight level enhancement for conduct involving a minor under twelve  would result in an adjusted offense level of 34 relating to the attempted enticement charge.  The attempted enticement guideline; however, will not control defendant's advisory guideline range.  Instead, Guideline Section 2G2.2 related to the receipt of child pornography counts governs here resulting in an advisory guideline range of 360 months to life imprisonment.

IV.    **THE 18 U.S.C. § 3553(a) FACTORS DEMONSTRATE THAT A SUBSTANTIAL SENTENCE IS WARRANTED IN THIS CASE**

As discussed below, the Section 3553(a) factors firmly establish that a sentence of at least 420 months is sufficient, but not greater than necessary in the instant case.

A.      **The Nature and Circumstances of the Offense**

As outlined in the Statement of Facts, the PSR and above, the nature and circumstances of the offense simply are egregious.  For months, defendant and the CI discussed in great detail the plan to kidnap, rape and murder a child.  The advisory guideline range of 360 months to life, however, does not account for the exceptional circumstances in this case: Defendant's intent to murder the

child and dispose of his body.  As discussed above, defendant and the CI had numerous

conversations about murdering the child.  *See supra* Section I(A) (suggesting that they strangle the

child and noting that "if he dies, he's going in a trash bag and getting hidden somewhere").  The

Guidelines do not include an enhancement arising from defendant's intent to murder the child.

Therefore, a sentence of at least 420 months will account not only for defendant's enticement and

pornography charges, but also for his stated intent to murder the child and stash the body.

Defendant undoubtedly will argue that his discussions with the CI either were pure fantasy

or that he did not intend to go through with the plan.  The evidence, however, demonstrates

otherwise.  On January 9, 2010, defendant listed the various items they would need to carry out their

plan.  During this chat, defendant stated that he would have: "my fake id, a rental car, duct tape, a

hotel reservation, maybe some odd objects like a screw driver lol, blankets, cleaning supplies, gloves

and I think thats it.  Unless I am forgetting something."  On February 5, 2010, ICE agents searched

defendant's rental car and found the exact items defendant listed above:  duct tape, Clorox bleach,

sponges, febreze, plastic gloves and a red Elmo doll.  Simply put, there is no doubt that defendant

had prepared to put this plan into action.  As defendant stated two days before his arrest, "can't wait

until friday!!!...rape some little boy or girl its going to be great."

Defendant's child pornography crimes also are extremely serious.  As described in the PSR,

defendant's collection of videos involved hard core pornography including the violent rape and

molestation of extremely young boys and girls.  One video was 59 minutes in length.[4]  Indeed, in

his discussions with the CI, defendant relished viewing and describing the most violent of videos.

---

[4] Application Note 4(b)(ii) of Section 2G2.2 states that an upward departure may be warranted "if
the length of the visual depiction is substantially more than 5 minutes."

For example, on December 4, 2009, defendant stated "I need to somehow find some more videos with crying." Describing a little girl in the midst of being raped, defendant exclaimed "Her face looks like she hates it! But I love it."

In short, the exceptional facts and circumstances of this case warrant a sentence of incarceration of at least 420 months imprisonment.

### B.      The History and Characteristics of the Defendant

Defendant's history and characteristics support a substantial prison sentence. As discussed above, defendant's chats with the CI provide a window into his extremely disturbed soul. In particular, defendant's perverse sexual interest in children – including infants – and obsession with violence support the requested sentence of at least 420 months imprisonment. During his chats, defendant repeatedly expressed his desire to rape and sodomize a newborn. The chats further highlight Defendant's callous indifference to the pain, torture, and humiliation felt by the innocent victims involved in his favorite child pornography videos. Indeed, defendant loved discussing creative ways to rape and torture his intended victim. Defendant even admitted on December 4, 2009 that "[t]he thought of being serial molestors makes me hard." Finally, in the chats, defendant also admitted to inappropriately touching his stepbrother. In light of defendant's true nature, a substantial prison term is warranted.

### C.      The Need for the Sentence Imposed To Reflect the Seriousness of the Offense

Defendant's attempt to entice another individual into kidnapping, raping and murdering a child is an extremely serious offense that calls for a substantial prison term. There is no doubt that the ICE agents who arrested defendant on February 5, 2010 saved the life of an innocent child.

Moreover, receipt and possession of child pornography are extremely serious offenses that

16

also justify a substantial period of incarceration.  These are not victimless crimes.  In fact, in the sample of images reviewed for prosecution, defendant's collection of images and videos contained known victims of child pornography.  As the Supreme Court has noted,

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.  A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

*New York v. Ferber,* 458 U.S. 747, 759 n.10 (1982) (citations omitted).

Moreover, defendant's demand for child pornography promotes the child pornography market and encourages other pedophiles to subject children to horrible abuses to supply the market.  Like any other product, the laws of supply and demand apply to the child pornography market.  Defendant's demand to receive, view, and possess images of child pornography for his own personal sexual gratification contributed to and promoted the market for the images depicting the rape and molestation of children.  A substantial prison sentence will reflect the seriousness of defendant's offenses and promote respect for the law.

**D.     The Need for the Sentence Imposed to Afford Adequate Deterrence and to Protect the Public**

A term of imprisonment of at least 420 months is necessary to deter the defendant from engaging in illegal acts in the future and to protect the public.  This defendant gets aroused looking at children playing at a playground.  On December 5, 2009, defendant told the CI "I always smoke on my balcony and there is a playground down below with kids there lot.  If I didn't actually live here I would grab one of them!"  A few days earlier, defendant discussed taking a child from a crowded beach, from an arcade, or walking to or from school.  Everywhere he looks, this defendant

sees potential minor victims.

The facts of this case demonstrate that defendant cannot control his obsession involving the exploitation of children.  Accordingly, the Government respectfully submits that only a substantial period of incarceration adequately will deter the defendant from continued criminal conduct and protect the public.  Moreover, a significant sentence will send a direct message to others involved in online enticement and receipt and possession of child pornography that there are serious consequences arising from the exploitation of children.

### E.      The Need for Defendant To Receive Treatment

Defendant's perverse sexual interests in children and violence are well documented. Therefore, this defendant clearly is in need of substantial treatment.  The Government respectfully submits that a substantial period of incarceration is necessary to give the defendant time to participate in a sex offender treatment program.

## V.      CONCLUSION

For the reasons outlined above, the Government respectfully requests that the Court sentence defendant ALAN PAUL STRIEPER to at least 420 months in prison.

Respectfully submitted,

Neil H. MacBride
United States Attorney


By:         /s/
Melissa E. O'Boyle
Assistant United States Attorney
Virginia State Bar No. 47449
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510

Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address - Melissa.OBoyle@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on August 30, 2010, I electronically filed a copy of the foregoing with the Clerk

of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the

following:

Walter B. Dalton
Assistant Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
(757) 451-0870
(757) 457-0880
walter_dalton@fd.org

I further certify that on August 30, 2010, I caused a true and correct copy of the foregoing

to be mailed to the following:

Janice Hyatt
U.S. Probation Officer
600 Granby Street, Suite 200
Norfolk, Virginia 23510

By: _____/s/_____
Melissa E. O'Boyle
Assistant United States Attorney
Virginia State Bar No. 47449
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address - Melissa.OBoyle@usdoj.gov