**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ALAN PAUL STRIEPER,**

              **Petitioner,**

**v.**                                    **Criminal No.: 2:10cr61**
                                      **Civil No.: 2:13cv34**

**UNITED STATES OF AMERICA,**

              **Respondent.**

## OPINION AND ORDER

        This matter is before the Court on Petitioner Alan Paul
Strieper's ("Petitioner") Motion to Vacate, Set Aside, or
Correct Sentence, filed pursuant to 28 U.S.C. § 2255.
Petitioner's § 2255 motion alleges that his trial and appellate
counsel were ineffective for failing to challenge a Guideline
enhancement applied at Petitioner's sentencing, and that his
appellate counsel was ineffective for failing to challenge trial
counsel's performance.    The Court finds that an evidentiary
hearing is unnecessary because the record conclusively
demonstrates that Petitioner is not entitled to the relief
sought in his § 2255 motion.    See R. Governing § 2255
Proceedings in U.S. Dist. Cts. 8(a).    For the reasons discussed
below, Petitioner's § 2255 motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

        On June 11, 2010, Petitioner pled guilty, without a written
plea agreement, to the following four criminal felony charges:

one count of Attempted Enticement, in violation of 18 U.S.C. § 2422(a); two counts of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2); and one count of Possession of Material Containing Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5). The Presentence Investigation Report ("PSR"), which was prepared in advance of Petitioner's sentencing hearing, recommended that the Court apply two five-level enhancements to calculate Petitioner's Guideline range. Specifically, the PSR Guideline calculation included a five-level enhancement for engaging in "a pattern of activity involving the sexual abuse or exploitation of a minor," U.S.S.G. § 2G2.2(b)(5) (hereinafter "five-level exploitation enhancement"), and a five-level enhancement for distribution of child pornography "for receipt, or expectation of receipt, of a thing of value," U.S.S.G. § 2G2.2(b)(3)(B) (hereinafter "five-level distribution enhancement"). Petitioner's trial counsel objected to the five-level exploitation enhancement but did not object to the five-level distribution enhancement. After considering extensive argument from the government and defense counsel regarding the five-level exploitation enhancement, the Court overruled defense counsel's objection. The resulting Guideline calculation was an Offense Level 42, Criminal History Category of I, and an unrestricted advisory Guideline range of

2

360 months to life.[1] The Court sentenced Petitioner to 420 months imprisonment.

On October 1, 2010, Petitioner appealed his sentence to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). Petitioner's appellate counsel, which included his trial counsel and a second attorney, argued on appeal that this Court committed error by applying both five-level setencning enhancements. On January 23, 2012, the Fourth Circuit affirmed Petitioner's sentence. United States v. Strieper, 666 F.3d 288 (4th Cir. 2012).

Petitioner filed his initial § 2255 motion on January 22, 2013. The government thereafter filed a brief in opposition. On April 8, 2013, after the government had already responded, Petitioner filed an amended § 2255 motion. Upon receiving such amended filing, the Court issued an order providing the government a second opportunity to respond. On May 22, 2013, the government filed a response in opposition to Petitioner's amended § 2255 motion. Petitioner did not file a reply brief, and this is matter is now ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate,

---

[1] As indicated in the government's § 2255 opposition brief, the prison sentence was statutorily limited to 840 months imprisonment.

set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion." Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. See In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000) ("'[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" (quoting Davis v. United States, 417 U.S. 333, 343 (1974))). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of

correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1981). Accordingly, a § 2255 collateral challenge "may not do service for an appeal." Id. at 165.

A freestanding claim of ineffective assistance of counsel is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010); see United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) (indicating that ineffective assistance of counsel claims "are normally raised before the district court via 28 U.S.C. § 2255").

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)) (emphasis added). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland,

6

466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

In conducting a hindsight evaluation of counsel's performance, a court must recognize that there "are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. Accordingly, the difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions required a strategic "assessment and balancing of perceived benefits against perceived risks." United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004). "Once counsel conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable.'" Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009) (quoting Strickland, 466 U.S. at 690).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the Petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

Petitioner's § 2255 motion advances three claims, all of which challenge the effectiveness of defense counsel's representation. For the reasons discussed below, each of Petitioner's claims fails on the merits.

### A. Ineffective Assistance of Trial Counsel

Petitioner first claims that his trial counsel provided ineffective assistance by failing to object to the five-level distribution enhancement applied at sentencing. The relevant Guideline section provides for a five-level enhancement when a child pornography offense involves "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B). The application notes to the Guidelines define "distribution" to

8

include "posting material involving the sexual exploitation of a minor on a website for public viewing." U.S.S.G. § 2G2.2 App.

n.1. The application notes further provide as follows:

> "Distribution for the receipt, <u>or expectation of receipt</u>, of a thing of value, but not for pecuniary gain" means any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit. "Thing of value" means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, <u>the "thing of value" is the child pornographic material received in exchange for other child pornographic material</u> bartered in consideration for the material received.

<u>Id.</u> (emphasis added). Petitioner contends that "nothing in the record shows that [he] expected to receive some benefit" in exchange for distributing child pornography through a peer-to-peer file sharing network, and that his lawyer was therefore ineffective for failing to challenge the five-level distribution enhancement at sentencing. Am. § 2255 Mot. ¶ 12(a), ECF No. 48.

As indicated above, in evaluating trial counsel's performance in the context of a § 2255 motion, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. This Court is therefore required to "indulge a <u>strong presumption</u> that counsel's conduct falls within the wide range of reasonable professional assistance, and that, under the circumstances, the

challenged action, might be considered sound trial strategy."
United States v. Higgs, 663 F.3d 726, 739 (4th Cir. 2011)
(quotation marks and citations omitted) (emphasis added); see
United States v. Fulks, 683 F.3d 512, 517 (4th Cir. 2012)
(discussing "the latitude customarily afforded criminal defense
lawyers in formulating strategy"); see also Strickland, 466 U.S.
at 690 (recognizing that "[t]he availability of intrusive post-
trial inquiry into attorney performance . . . would encourage
the proliferation of ineffectiveness challenges" and lead to the
equivalent of a "second trial" adjudicating the reasonableness
of "counsel's unsuccessful defense"). Petitioner therefore
bears the heavy burden of demonstrating that his lawyer's
performance "amounted to incompetence under 'prevailing
professional norms.'" Harrington v. Richter, -- U.S. --, 131 S.
Ct. 770, 788 (2011) (quoting Strickland, 466 U.S. at 690); see
Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978)
(explaining that "effective representation is not synonymous
with errorless representation" and that a petitioner "'generally
must establish that his counsel's error was so flagrant that a
court can conclude that it resulted from neglect or ignorance
rather than from informed, professional deliberation.'" (quoting
Marzullo v. Maryland, 561 F.2d 540, 544 (4th Cir. 1977))).

The difficulty in overcoming the general presumption that
counsel provided constitutionally adequate assistance is even

greater here because counsel's actions required a strategic "assessment and balancing of perceived benefits against perceived risks." Terry, 366 F.3d at 317. Such strategic decisions must be afforded "'enormous deference.'" Id. (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)). The additional deference reflects the reality that "[a] criminal defense attorney routinely faces thorny tactical decisions that may heavily bear on the defendant's life or liberty," and that such difficult tactical decisions must often be made "based on educated surmise and conjecture." Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011).

### 1. Five-Level Distribution Enhancement Case Law

Turning back the clock to September of 2010 to consider the state of the law at the time Petitioner was sentenced, there was not an on-point controlling case as to whether the use of peer-to-peer file sharing software was alone sufficient to warrant the five-level distribution enhancement under Guideline § 2G2.2(b)(3)(B). See Strieper, 666 F.3d at 295 (acknowledging that, as of January 2012, the Fourth Circuit had "yet to address whether a district court may appropriately apply a five-level enhancement for sharing files through [a peer-to-peer] network"). While other circuits had squarely addressed this issue prior to 2010, they were split as to the proper

11

interpretation of the Guidelines.[2] See id. (indicating that the Fourth Circuit's "sister circuits have reached different conclusions" as to whether sharing files through a peer-to-peer network warrants the five-level distribution enhancement (citing United States v. Griffin, 482 F.3d 1008, 1013 (8th Cir. 2007), United States v. Geiner, 498 F.3d 1104, 1111 (10th Cir. 2007))). Although this issue remained an open question in late 2010, the Fourth Circuit had previously concluded in a published case that sharing child pornography through a peer-to-peer network constitutes "distribution" under the Guidelines, and thus, at a minimum warrants a 2-level Guideline enhancement. United States v. Layton, 564 F.3d 330, 335 (2009) (affirming a 2-level enhancement for "other distribution" pursuant to U.S.S.G. § 2G2.2(b)(3)(F)).

A further review of relevant in-circuit authority reveals only one district court opinion addressing this issue at the time Petitioner was sentenced. United States v. McVey, 476 F.

---

[2] The Fourth Circuit squarely addressed such issue several years later in United States v. McManus, 734 F.3d 315, 318 (4th Cir. 2013), labeling it a "question of first impression in this Circuit." In McManus, the Fourth Circuit rejected a "per se rule" that use of file-sharing software necessarily warrants a five-level distribution enhancement, holding that "proof of an individual defendant's mental state" is necessary "to trigger the five-level enhancement" under U.S.S.G. § 2G2.2(b)(3)(B). This Court, however, cannot fault defense counsel for failing to anticipate this future development in the law. See United States v. Dyess, 730 F.3d 354, 363 (4th Cir. 2013) ("'[A]n attorney's failure to anticipate a new rule of law [is] not constitutionally deficient.'" (quoting United States v. McNamara, 74 F.3d 514, 516 (4th Cir. 1996))).

Supp. 2d 560 (E.D. Va. 2007). The McVey opinion expressly held

that the five-level distribution enhancement was applicable to

peer-to-peer file sharing, stating:

> In the instant case, Defendant installed and used
> file-sharing software to receive child pornography
> from others, while knowing that the software allowed
> other persons to obtain child pornography from his
> computer. In other words, Defendant knowingly became
> a member of a file-sharing group of computer users
> that shared child pornography. It is undisputed that
> the very purpose of belonging to any file-sharing
> group is to facilitate the receipt of files from
> others by agreeing to allow other persons access to
> the files on one's own computer. Thus, when Defendant
> distributed child pornography by installing and using
> the file-sharing software, he did so in anticipation
> of, or with a reasonable belief in the possibility of,
> the receipt of a thing of value, namely, other child
> pornography. Accordingly, the court FINDS by a
> preponderance of the evidence that the five-level
> enhancement pursuant to section 2G2.2(b)(3)(B) applies
> in this case

Id. at 563. Although such opinion, issued by another judge of

this Court, would not have been binding on the undersigned

judge, as the lone on-point reported case from within the

circuit, it would have provided at least persuasive support for

the application of the five-level distribution enhancement based

solely on Petitioner's sharing of child pornography through a

peer-to-peer network.[3]

---

[3] Particularly in light of the unsettled nature of the relevant law,
Petitioner's hypothetical objection that is now highlighted in
retrospect is best viewed to have been "colorable" for the purpose of
considering the effectiveness of defense counsel's representation.
Cf. Tice, 647 F.3d at 104 (indicating that the "prudent course is to
omit from [the] review of counsel's performance in th[e] case any
supposed disposition of the hypothetical motion" and instead simply

13

## 2. Relevant Facts

Turning to the facts of this case as presented in 2010, there are two case-specific considerations that make this case unique, and even assuming that the legal issue outlined above was resolved in favor of Petitioner, such facts are sufficient to demonstrate that trial counsel's decision not to challenge the five-level distribution enhancement fell within the wide range of reasonably professional assistance. First, unlike some of the out-of-circuit cases addressing whether sharing child pornography using file-sharing software, without more, is sufficient to support the five-level distribution enhancement, here, there was circumstantial evidence in addition to the use of file-sharing software that suggested that Petitioner expected to receive something in return for distributing child pornography. Notably, as explained by the government at sentencing:

> This defendant, as was noted in the presentence report, reached out . . . [to] another defendant in this court that has cooperated named Donovan McPeak, and he reached out to him and they viewed child pornography together. The two of them. The defendant showed [Mr. McPeak] child pornography that he had, and Mr. McPeak in exchange came over to [the defendant's] house and brought his hard drive and showed Mr. Strieper [child pornography] that he had on his hard drive.

recognize that had such motion been made, it "would have carried some substance, without opining further as to its ultimate fate until it becomes necessary to assess the prejudice, if any, stemming from counsel's inaction").

14

Sent. Tr. 31, ECF No. 40. Even assuming that such in person sharing/bartering did not qualify as "distribution" under the Guidelines as there was no evidence that computer files were actually transferred, a challenge to the five-level distribution enhancement would have implicated Petitioner's expectations when sharing child pornography online, and Petitioner's in-person visual exchange would have weighed strongly against him.[4]

In addition to the interaction with Mr. McPeak, the record reveals that Petitioner interacted with several minor boys through his computer and/or cell phone, and that he tried to arrange a sexual encounter with one of the boys, who was fifteen years old, after seeing a picture of the boy's penis on Petitioner's computer. See PSR ¶¶ 46, 59, 64, ECF No. 32. The PSR also suggests that Petitioner may have sent nude pictures of himself to a minor and may have received nude pictures of such minor in return. See PSR ¶ 65.[5] All electronic interactions

---

[4] Similarly, excerpts from a chat between Petitioner and a confidential source working with the government suggest that Petitioner had previously chatted with the confidential source about, at a minimum, visually sharing his child pornography with the confidential source when he arrived in Norfolk, Virginia. PSR ¶ 22.

[5] PSR ¶ 65 discusses online interactions between a minor boy and an individual calling himself "Tom" in which nude photos were exchanged. Curiously, Petitioner is not identified in ¶ 65 of the PSR as the individual calling himself "Tom." That said, unlike the Court, both the government and defense counsel have access to fact discovery, and neither defense counsel, nor Petitioner himself, objected to the "offense conduct" set forth in ¶ 65 when given the opportunity at the sentencing hearing.

15

involving Petitioner attempting to elicit nude photos or sexual favors from minors would be further circumstantial evidence detrimental to Petitioner's position on whether he shared child pornography with the expectation of receiving something of value. Cf. United States v. Kulla, 434 F. App'x 268, 269 (4th Cir. 2011) (indicating that across "various criminal statutes, federal appellate courts have found diverse intangible items to be 'things of value'" including "sexual intercourse," "conjugal visits," or "the promise of sexual intercourse").[6]

It is also notable that Petitioner was an "information systems technician" in the U.S. Navy and was characterized in the PSR as being a highly advanced computer user. PSR ¶¶ 49, 121. Petitioner's online chats with an Immigration and Customs Enforcement "confidential source" ("CS") further revealed that Petitioner was very concerned about keeping his child pornography collection undetected by authorities. Specifically, Petitioner indicated that he used only one computer for child pornography and kept it encrypted, and that he periodically did an "NSA standard wipe twice" and then started over with his collection. PSR ¶ 18. The fact that Petitioner had such a

---

[6] Although the facts before the Court do not indicate that Petitioner ever electronically shared child pornography with any of the underage boys he was trying to entice into engaging in sex acts, if such evidence existed, the five-level distribution enhancement would be superseded by a seven-level enhancement applicable to distribution to minors in an effort to entice an illegal sex act. U.S.S.G. § 2G2.2(b)(3)(E).

high-level of computer sophistication, and such a high-level of concern regarding being discovered, yet still chose to share child pornography through a peer-to-peer file sharing network, would have provided the government another piece of circumstantial evidence supporting the inference that the reason Petitioner shared such files (and thus opened himself up to discovery by authorities) was because he ultimately expected to receive something of value in return (i.e. more child pornography and/or relationships that led to sexual encounters).

Second, the unique case-specific facts undeniably demonstrate that defense counsel had strong reason to avoid any additional scrutiny of Petitioner's offense conduct. Illustrating such point, in ruling on Petitioner's § 2255 motion, this Court needed to do little to refresh its recollection about this case because Petitioner's offense has remained etched in the Court's mind due to the fact that Petitioner's offense involved a scheme, that was interrupted midstream by authorities, to kidnap, repeatedly rape, and likely kill, a very young boy. PSR ¶ 24, 29. Through online chats with the CS, who Petitioner believed was his accomplice in such criminal scheme, Petitioner revealed his desire to kidnap and rape a male child that was only "4 or 5" years old, and further indicated his desire to rape an even younger child, although he acknowledged that kidnapping a child younger than "4 or 5" would

17

be more difficult. Id. Among other disturbing things, Petitioner stated that he hoped the young child would cry while being raped so that Petitioner "can tell him to shut the fuck up." Id. Petitioner further indicated that the thought of the child dying turned him on, and indicated that it "sounds kind of hot in a way" to rape the boy again after he was dead. Id. Although, in other circumstances, online chats about such a gruesome subject matter might be dismissed as a deranged fantasy, here, Petitioner discussed the necessary "supplies" for succeeding in such brutal kidnapping, rape, and murder, and he arrived at the airport to meet his purported accomplice with the following items in his vehicle's trunk: "two rolls of duct tape, a pre-paid Tracfone, rubber gloves, sponges, bleach, cleaning materials, and several bottles of unknown pills" as well as a "stuffed Elmo doll." PSR ¶ 36. As the Court explained at sentencing:

> And I just, I can't repeat, I cannot bring myself to repeat the things that are discussed [in the PSR], and so I'll try to do it in a general sense.
> . . .
> This, in seven years on the bench, five years in state court and two years here, having tried numerous murders, murder cases and child molestation cases, even though this was stopped before it could happen, this is the most disturbing thing I think I've seen in seven years. Because I have no doubt that Mr. Strieper would have done what was being discussed had this been, this agent been another person who was actually engaged in, interested in engaging in this behavior.

Sent. Tr. 43, 47.

18

In light of such horrific evidence, a reasonable defense attorney in these circumstances would want to minimize the need for the Court to scrutinize either Mr. Strieper's extensive discussions with the CS about child pornography and the plan to kidnap and rape a child, as well as his efforts to engage in sex or sodomy with underage boys. The decision to avoid further scrutiny would necessarily entail careful strategic balancing of the likelihood of success of any objection that would lead to such scrutiny. See Meyer v. Branker, 506 F.3d 358, 371 (4th Cir. 2007) ("In the sentencing context, th[e] 'highly deferential' standard means that defense counsel have the flexibility to vary their approach given their client's unique circumstances."). It appears to the Court that such detailed inquiry would have been very likely if the defense raised an objection that directly called into question Petitioner's mental state/expectations associated with his decision to share child pornography on a peer-to-peer network. Moreover, it goes without saying that such inquiry had the potential to be very detrimental to the Court's individualized assessment of this criminal defendant's culpability and the appropriate sentence. See, e.g., Gov't Sent. Argument, Sent. Tr. 30 ("He was an online menace. This defendant is every parent[']s worst nightmare. He was reaching out into the minor's cellphones, their computers.

19

He was having sexually explicit dialogue with children while they were at school. And he was asking to meet them."); PSR ¶ 66 (revealing Mr. McPeak's belief that Petitioner "would actually engage in sex with children if he had the opportunity," and indicating that during their first in person meeting, "Strieper took McPeak in his bedroom and showed him a video of child pornography on his computer and they both masturbated").

In addition to what was actually reported in the PSR, the government's statements at sentencing suggest that additional damaging evidence could have been presented if Petitioner's intent/expectations had been challenged. Such information could have included additional chat logs and/or live witness testimony, including federal agents, Mr. McPeak, and/or some of the minor boys. See Sent. Tr. 28-29 (government's statements about Petitioner's chats with the CS that do not appear to be included in the PSR as the government reported Petitioner giving "a running play-by-play on what he was watching to the CS, and the more brutal images that came up and came across his computer, the more excited this particular defendant appeared to be"); PSR ¶ 46 (discussing chat logs not before the Court involving Petitioner viewing a nude picture of the 15 year old boy that he had been chatting with online, and further revealing Petitioner's efforts to arrange a meeting with the minor boy in a park for the purpose of engaging in oral sodomy); Govt.

Position Paper 1, ECF No. 28 (indicating the government's intent to call a witness in order to introduce additional evidence at the sentencing hearing, "[i]f necessary").[7] In the process of conducting a hindsight evaluation of defense counsel's decision not to challenge a Guideline enhancement, it cannot be overlooked that the Guidelines are only the starting point of the sentencing process, and the Court's individualized assessment of a defendant, and its consideration of the 18 U.S.C. § 3553(a) statutory sentencing factors, are critical to determining the appropriate sentence, which in this case could have been up to 840 months imprisonment regardless of the Guideline calculation.

### 3. Analysis

Considering first only the uncertain state of the law at the time Petitioner was sentenced, the Court finds that defense counsel did not perform deficiently for failing to raise an objection which, although colorable, was based entirely on out-

---

[7] The record demonstrates not only that the government had additional damaging evidence in its possession, but also that it was prepared to introduce it at sentencing if necessary to rebut an objection to the PSR Guideline calculation. In addition to the 15-year old that Defendant attempted to entice into engaging in oral-sodomy, the government had evidence that Petitioner attempted to entice a second underage boy into engaging in illegal sexual activity. Defense counsel's immediate objection to the introduction of such testimony at sentencing plainly reveals counsel's strong desire to avoid further factual development. Ultimately, the government did not introduce such evidence as the Court determined that the information in the PSR was sufficient to support the five-level exploitation enhancement that was being challenged by the defense. See Govt. Position Paper 1, 5, ECF No. 28; Sent. Tr. 9, 27.

of-circuit precedent.    See Gregory v. United States, 109 F.

Supp. 2d 441, 458 (E.D. Va. 2000) (explaining that "an attorney

is not constitutionally deficient for failing to research the

law of other circuits," and opining that the same holding had

been implicitly affirmed by the Fourth Circuit in United States

v. McNamara, 74 F.3d 514, 516-17 (4th Cir. 1996)); United States

v. Mellor, No. 7:07cr3, 2010 WL 3585892, at *9 (W.D. Va. Sept.

9, 2010) ("Given the inconclusive array of legal authority at

the time of [the defendant's] sentencing, counsel's failure to

argue the [Guideline] issue does not fall foul of the Strickland

standard.    The Fourth Circuit has never held that the mere

failure to cite favorable but non-binding decisional authority

constitutes ineffective assistance of counsel.")    (emphasis

added); McCalla v. United States, Criminal No. RWT 06-0404, 2010

WL 3385458, at *3 (D. Md. Aug. 26, 2010) (indicating that

counsel's failure to provide the defendant advice during plea

negotiations regarding a specific Guideline provision was not

constitutionally deficient because "there was a three-way

circuit split on the issue, and there was no contrary,

controlling Fourth Circuit precedent"); United States v.

Jiminez, 54 F. App'x 369, 371 (3d Cir. 2002) ("[I]neffective

assistance cannot be established by failure to argue a point

supported only by authority outside this jurisdiction."); see

also Strieper, 666 F.3d at 295 (holding that this Court's

application of the 5-level distribution enhancement was not clear error because there was a circuit-split on this issue and, as recognized by the Eighth Circuit "[peer-to-peer] networks exist—as the name 'file-sharing' suggests—for users to share, swap, barter, or trade files between one another" (citing Griffin, 482 F.3d at 1013)).

Second, even if this Court assumes in retrospect that it would have rejected McVey and applied a legal standard favorable to Petitioner that required evidence of his mental state at the time he distributed child pornography, the Court would still conclude that counsel was not constitutionally deficient for failing to challenge the five-level distribution enhancement because there appears to have been: (1) substantial circumstantial evidence weighing against Petitioner's ability to succeed on the hypothetical challenge he now posits; (2) a risk of scrutinizing damaging evidence already in the record; and (3) a risk of driving the government to introduce additional damaging evidence if Petitioner's mental state/expectations had been directly called into question. Accordingly, in light of the questionable likelihood of success even if counsel cleared the first hurdle of convincing this Court to adopt a favorable legal standard, it plainly was strategically reasonable for defense counsel to decide not to make such objection after weighing the perceived chance of success against the undeniable

risk involved in placing Petitioner's disturbing conduct under the microscope. See United States v. Dehlinger, 740 F.3d 315, 325 (4th Cir. 2014) ("The Sixth Amendment does not provide a basis for disappointed clients to launch after-the-fact attacks on the objectively reasonable strategic decisions of their trial attorneys."); Rose v. Lee, 252 F.3d 676, 692-93 (4th Cir. 2001) (citing Turner v. Williams, 35 F.3d 872, 904 (4th Cir. 1994) for the proposition that "where there is a conceivable strategic advantage to the decision not to introduce certain evidence, that choice is virtually unassailable on collateral review"). Suffice it to say, several years later, this case remains one of "the most disturbing thing[s]" this Court has seen come before it, and the unsettling details of Petitioner's ongoing efforts to convince a minor boy to have sex with him, or failing that, to rape, kidnap, and kill a child as young as four years old, support the difficult, but reasonable, strategic decision to forgo raising an objection that would likely result in further expansion of the record, and at a minimum place the already horrific record under extremely close scrutiny. Cf. Sent. Tr. 9 (revealing the government's intention to call a witness to provide additional evidence in response to the objection that defense counsel did raise at sentencing). Considering all of the above, the Court finds that Petitioner has failed to overcome the "strong presumption that counsel's conduct falls

24

within the wide range of reasonable professional assistance."
Strickland, 466 U.S. at 689.

Because Petitioner fails to establish deficient
performance, the Court is not required to address the prejudice
prong of the two-pronged Strickland test.    Roane, 378 F.3d at
404.  However, the Court separately finds that Petitioner fails
to demonstrate prejudice.

At the time of Petitioner's sentencing, this Court did not
have the benefit of the Fourth Circuit's opinion in United
States v. McManus, 734 F.3d 315, 318 (4th Cir. 2013), nor any
other Fourth Circuit opinion that suggested how that Court would
have ruled on this issue.  Instead, the only on-point reported
case within this circuit was a district court case that called
for the application of the five-level distribution enhancement
based solely on the use of a peer-to-peer file sharing network
to distribute child pornography.    McVey, 476 F. Supp. 2d at
563.  Even assuming this Court rejected the McVey opinion, a
shaky assumption at best, the operative question would not have
been whether the government possessed evidence demonstrating
that Petitioner had in fact engaged in "quid-pro-quo" bartering
of child pornography, but instead would have been whether the
government had demonstrated that it was more likely than not
that Petitioner distributed child pornography with the
"expectation of receipt, of a thing of value," to include

additional child pornography. U.S.S.G. § 2G2.2 App. n.1 (emphasis added). Out of circuit law that would have been directly relevant to such determination included Geiner, 498 F.3d at 1110, in which the Tenth Circuit held that "a defendant expects to receive a thing of value under U.S.S.G. § 2G2.2(b)(3)(B) when he distributes child pornography in anticipation of, or while reasonably believing in the possibility of, the receipt of a thing of value." As noted above, the circumstantial evidence regarding Petitioner's computer expertise, his online sharing of child pornography notwithstanding his strong concern about being detected, his interactions with minors online with the hope of later engaging in sexual acts with them, and his in-person visual "exchange" of child pornography with Mr. McPeak, all suggest that an objection calling into question Petitioner's expectations in sharing files would have been overruled, particularly when considering the "reasonable belie[f]" standard advocated by the Tenth Circuit. See also United States v. Ultsch, 578 F.3d 827, 830 (8th Cir. 2009) (indicating that whether the five-level distribution enhancement applies requires a "case-by-case" determination and affirming the district court's application of such enhancement based on circumstantial evidence associated with defendant's sophistication regarding file-sharing software).

Accordingly, at best, Petitioner has demonstrated that he had a colorable basis to challenge the five-level distribution enhancement. However, in light of the circumstantial evidence specific to this case, not to mention the likelihood that the government would have sought to introduce additional evidence alluded to, but not fleshed out, in the PSR, the Court would have likely overruled a timely filed objection. Petitioner's hindsight challenge therefore fails to undermine this Court's confidence in the outcome. Strickland, 466 U.S. at 694. Petitioner's first claim of ineffective assistance is therefore denied for failing to satisfy either prong of the Strickland test.

## B. Appellate Counsel's Failure to Raise Ineffective Assistance of Trial Counsel

Petitioner next claims that his appellate counsel was ineffective for failing to challenge trial counsel's effectiveness based on trial counsel's failure to object to the five-level distribution enhancement. For appellate counsel's assistance to be effective, counsel "is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (quoting Jones v. Barnes, 463 U.S. 745, 752

(1983)) (alteration in original). Accordingly, appellate counsel is presumed to have "'decided which issues were most likely to afford relief on appeal.'" Id. (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

Here, on appeal, Petitioner's counsel directly challenged this Court's application of the five-level distribution enhancement as plain error.[8] As counsel clearly identified this legal argument as a basis for appeal, it is presumed that counsel decided that a direct challenge would have a greater likelihood of success than a challenge alleging ineffective assistance. Because Petitioner fails to demonstrate that a challenge to counsel's performance regarding the enhancement was

---

[8] The fact that defense counsel challenged the five-level distribution enhancement on appeal, but did not challenge such enhancement before this Court, is not indicative of such enhancement being overlooked at the sentencing stage, because different strategic considerations exist at the trial level and appellate level. See Lovitt v. True, 403 F.3d 171, 179 (4th Cir. 2005) ("In many cases, counsel's decision not to pursue a particular approach at sentencing reflects not incompetence, but rather a sound strategic choice."). Most notably, there is not an opportunity for the government to expand the record with damaging evidence at the appellate level, nor is there the risk that an ill-advised argument will lengthen a client's sentence, and once such risks were eliminated in this case, so were the strategic impediments to lodging such objection.

"clearly stronger" than a direct challenge to the enhancement itself, Petitioner fails to demonstrate deficient performance of appellate counsel.

Supporting the above conclusion, this Court's independent consideration of the strength of a hypothetical ineffective assistance challenge suggests that such a claim would have been swiftly rejected by the Fourth Circuit. Notably, ineffective assistance claims are most appropriately filed through a § 2255 motion and will only be successful on direct appeal if it "'conclusively appears' from the record that defense counsel did not provide effective representation." United States v. Gastiaburo, 16 F.3d 582, 590 (4th Cir. 1994) (quoting United States v. Fisher, 477 F.2d 300, 302 (4th Cir. 1973). As outlined in the preceding section of this Opinion, the record here does not conclusively demonstrate that Petitioner's trial counsel provided ineffective assistance. To the contrary, trial counsel was not obligated to raise an objection supported only by out-of-circuit precedent, and even if trial counsel contemplated a favorable legal ruling based on such non-binding precedent, counsel had valid strategic reasons for not raising this objection. Accordingly, appellate counsel, which included Petitioner's trial counsel and another lawyer, appropriately decided to directly challenge the five-level distribution enhancement for plain error rather than advance a premature

29

ineffective assistance claim.  Their performance was therefore within the wide-range of reasonably professional assistance.

Moreover, even if Petitioner could satisfy Strickland's first prong regarding appellate counsel's performance, he fails to demonstrate prejudice.  Because it does not conclusively appear from the record that trial counsel performed deficiently, the Fourth Circuit would have rejected the hypothetical challenge now proposed by Petitioner had it been raised on appeal.  Petitioner therefore has not demonstrated a reasonable probability of a different outcome.

In sum, Petitioner fails to demonstrate either that appellate counsel's assistance "fell below an objective standard of reasonableness" or that "but for that failure, [Petitioner] would have prevailed in his appeal."  Lawrence, 517 F.3d at 709 (emphasis added).  Accordingly, Petitioner's second ineffective assistance claim is denied.

## C. Appellate Counsel's Failure to Raise Procedural Error

Petitioner's third ineffective assistance claim, which did not appear in his original § 2255 motion but was added in his amended § 2255 motion,[9] asserts that appellate counsel was ineffective for failing to argue that this Court committed

---

[9] The government does not challenge the timeliness of Petitioner's third claim. Cf. Miller v. United States, 735 F.3d 141, 143 (4th Cir. 2013) (discussing the government's waiver of the statute of limitations applicable to a § 2255 motion).

"procedural error" by applying the five-level distribution enhancement. Although it is unclear on what factual basis Petitioner contends that "procedural error" occurred, his third claim clearly fails on the merits.

As noted above, Petitioner's appellate counsel did in fact challenge the application of the five-level distribution enhancement on appeal. Def.'s Appellant Br. 28-34, ECF No. 50. The Fourth Circuit's opinion denying Petitioner's appeal expressly addressed and rejected appellate counsel's argument that this Court erred in applying such enhancement. Strieper, 666 F.3d at 295. Petitioner's amended § 2255 motion fails to demonstrate why appellate counsel should have phrased such direct challenge as a "procedural" challenge, nor does he demonstrate why such alternative approach would have resulted in a different outcome. Accordingly, to the extent Petitioner suggests that a "procedural" error occurred merely because the five-level distribution enhancement was applied at sentencing, such argument fails to satisfy either prong of the test outlined in Strickland.

Although Petitioner does not explain what type of "procedural error" he contends occurred, a review of the record does not reveal any apparent error in the sentencing procedure followed by the Court. Notably, this Court's recollection of this matter and its recent review of the record demonstrate that

31

the PSR was properly prepared in advance of sentencing and that both parties had the opportunity to object, and explain their reasons for objecting, both in writing and orally at sentencing. The Court had the opportunity to review and consider the PSR in advance of sentencing, and it was only after affording the parties the opportunity to present argument and evidence at sentencing that the Court determined the Guideline calculation, as recommended in the PSR, was appropriate. After calculating the Guidelines, the Court permitted Petitioner the opportunity to allocute, considered both parties' sentencing arguments, treated the Guidelines as advisory, considered the § 3553(a) sentencing factors, and imposed a sentence within the advisory Guideline range, noting that such sentence was sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a). Petitioner therefore fails to demonstrate that any procedural error occurred at sentencing.

For the reasons set forth immediately above, Petitioner fails to demonstrate that challenging the five-level distribution enhancement on appeal, but doing so through the prism of asserting a "procedural error," was clearly stronger than the direct challenge to the applicability of such enhancement that was in fact raised by appellate counsel. Petitioner therefore fails to demonstrate constitutionally deficient performance. Additionally, Petitioner fails to

32

demonstrate resulting prejudice as there is no indication from the record that there is a reasonable probability that a "procedural" challenge would have been successful. Petitioner's third and final ineffective assistance claim is therefore denied.

## IV. CONCLUSION

As discussed above, Petitioner's § 2255 motion is **DENIED** as he fails to demonstrate that trial or appellate counsel provided constitutionally deficient representation. Petitioner likewise fails to demonstrate that he was prejudiced by counsel's performance.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion also is **DENIED**. R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States

Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 17 , 2014

34